KATE HARDIN SULLIVAN, Appellant, v. M. HOL-
BROOK et al.

**Division One, April 1, 1908.**

**BRIEF: Failure to Obey Rules.** A total disregard by appellant
of the rules of the court, in reference to separate statement of
points and legal propositions relied upon, and the citation of
authorities in support thereof by names of parties and number
and page of volume in which found, amounts to a failure to
file a brief; and where appellant's testimony is presented to this
court in 26 pages of disjointed "Argument," and a review of
the testimony and pleadings reveals the fact that the case is
without merit and the judgment clearly correct, the case affords
a good occasion to enforce the rules and affirm the judgment for
failure to comply with such rules.

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*Charles Sullivan* for appellant.

*V. O. Coltrane* for respondents.

LAMM, J.—On November 12, 1903, Mrs. Sullivan
lodged a bill in equity in the Greene Circuit Court, the
object and general nature of which was to set aside
and vacate (1) an executed judgment in partition; (2)
the deed to the purchaser (Seamans) at said partition
sale; (3) certain conveyances from Seamans to Hol-
brook and from Holbrook to Judge Goode (and others
between the Jarretts and Seamans) conveying lot one
in E. T. Robberson's addition to the city of Springfield
in said county; (4) to declare, establish and execute
a trust in said lot under the will of Sue E. P. Mont-
gomery, the maternal ancestor of plaintiff, who died
testate seized of said real estate; (5) to determine and
establish the rights of plaintiff under the will of her
said mother; (6) to have an accounting of rents and
profits; and (7) for general equitable relief.

Among other things, it was alleged in the bill and shown by the proofs that plaintiff attained her majority on January 9th, 1894. That she was thereafter (in 1895) made a party defendant in a partition suit instituted in the Greene Circuit Court, having for its object the partition of said real estate among certain heirs and the grantees of certain heirs of said Sue E. P. Montgomery, and the sale of said lot. That proceedings were had in that case resulting in a partition and sale of the lot in 1895. That plaintiff received and appropriated her share of the proceeds of that sale. The record shows plaintiff executed, in that behalf, the following acquittance:

"Office of Sheriff of Greene County, Mo.,
"February 3rd, 1896.

"Received of F. M. Donnell, Sheriff of Greene County, the sum of two hundred and twenty-eight dollars and 75-100 dollars, being in full of my distributive share of real estate sold by partition wherein E. D. Seamans was plaintiff and Kate Hardin et al., were defendants.
$228.75.                               KATE HARDIN.

"State of New York, County of New York, ss.

"On this 8th day of February, 1896, before me personally appeared Kate Hardin, personally known to me to be the same person and acknowledged that she executed the signature on the within receipt for the purposes mentioned, and of her own free will and deed, and that she signed the same. Witness my hand and seal the day and date above stated.

"R. P. HESS, (158)
Notary public,
"(Seal.)                       New York Co."

No appeal was taken from the interlocutory judgment in partition, and none from the order approving the report of sale.

∴ The allegations of the bill on which it is sought to overturn the partition, the sale and the sundry deeds made in connection therewith are (in substance) fraud in the concoction of the judgment between defendants Holbrook, Seamans and J. H. Jarrett in divers enumerated particulars. It is also alleged that Judge Goode, who subsequently purchased a small part of the lot from defendant Holbrook, had notice of the existence of a trust created by Mrs. Montgomery's will, which (it is said) was an impassable barrier in the road of partition, and which latter was made in violation of the express terms of the will.

Plaintiff in this suit was originally brought into the partition suit as a party defendant by constructive service, eventually however appearing by an attorney and filing answer. There were two sales made under the judgment in partition—the first, set aside for inadequacy in the accepted bid. In her motion filed in that case, challenging the confirmation of the first sale, she appeared by other attorneys. A second sale was made and confirmed. Afterwards she partook of the proceeds and executed the receipt hereinbefore set forth. To avoid the effect of that receipt and these appearances, she alleges not that she did not receive the money represented by the rceipt, but that she was deceived and misled in the premises in ways pointed out. She testified at the trial that the appearance of attorneys on her behalf in the partition proceeding was unauthorized by her, but was authorized by her sister, who (with her knowledge) assumed to look after her affairs.

The chancellor, *nisi*, found in favor of defendants in the case at bar and plaintiff appealed to the St. Louis Court of Appeals. The title to real estate was plainly involved (sec. 12, art. 6, Constitution; section 5 of the amendment to the Constitution in 1884), and the appeal should have been brought in the first in-

stance to this court.    The case was briefed in the St. Louis Court of Appeals, and when reached for determination there was at once certified here, as of course.

  I.    By rule 15 of the St. Louis Court of Appeals it is provided that an appellant shall file "four copies of a brief, containing:    *First.*    A clear and concise statement of the pleadings and facts shown by the record.    *Second.*  *An enumeration in numerical order of the points or legal propositions made or relied on, accompanied by the citation of authorities supporting each proposition.*    *Third.*    If he so elects, an argument supporting each proposition made or relied on."

By rule 17 of that court it is directed that in citing authorities in support of any proposition it shall be the duty of counsel to give the names of the principal parties to any case cited from any report of adjudged cases, as well as the number of the volume and the page where the same may be found.

By rule 19 of that court it is provided that, in the discretion of the court, a failure to comply with rule 15 shall result in a dismissal of the appeal or writ of error, or the continuing or resetting the cause on proper terms.

By rule 15 of this court it is provided, *inter alia,* as follows:    "All briefs  .  .  .  .  shall contain, separate and apart from the argument or discussion of authorities, a statement, in numerical order, of the points relied on, together with a citation of authorities appropriate under each point.    And any brief failing to comply with this rule *may be disregarded by the court*  .  .  .  .

  "In citing authorities, in support of any proposition, it shall be the duty of the counsel to give the names of the parties to any case cited from any report of the adjudged cases, as well as the number of the volume and the pages where the same will be found  .  .  .  ."

By rule 16 of this court it is provided that if any appellant in any civil case shall fail to comply with rule 15, the court, when the cause is called for hearing, will dismiss the appeal or writ of error; or, at the option of the respondent, continue the cause at the cost of the parties in default.

Comparison will show that the rules of the St. Louis Court of Appeals and of this court are substantial equivalents of each other in the foregoing particulars. The principal brief and brief in reply filed by appellant's counsel violate both the spirit and letter of the rules of both courts—in that:

(a) In an array of authorities cited the names of the parties in the cases referred to are omitted, whether by inadvertence or *ex industria* does not appear.

(b) Not only so, but there is an entire indifference to the quoted rules in those particulars commanding a separation of legal propositions relied on for reversal from comments of counsel, *arguendo*. Indeed, appellant presents no brief proper at all—as required by the established usages of both courts and as understood at the bar. The only authorities cited and the only legal propositions advanced are inextricably interwoven with the warp and woof of a running fire of comment of counsel in twenty-six solid pages of printed matter, labeled by learned counsel himself, ''Argument.'' This matter is colored and heated with vituperative expletives and rhetorical flourishes, *impedimenta*, well calculated to divert, or impede, not aid, the judicial mind in its search through the mass for the calm, cold, legal propositions so ambushed and hid away. If learned counsel had paid attention to the rules of court in the logical arrangement and segregation of his legal propositions, and in the proper citation of his authorities, his case would be in a shape

contemplated by the rules, but, as it is, his case is here in the teeth of them.

The rules of appellate practice in hand are simple and plain. They fill no office of mere red tape, or as a show of surface routine. To the contrary, they have substance, and carry on their face the obvious purpose to aid appellate courts in getting at the right of a cause. Hence, apparently, they bespeak the dignity arising from obedience. If they are not to be obeyed, they should be done away with once for all. A just rule, fairly interpreted and enforced, wrongs no man. Ostensibly enforced, but not, it necessarily wrongs some men, viz.: those who labor to obey it—the very ones it should not injure. If the rules in question stand for something and are ever to be enforced, they should be put in motion in this case. Accordingly, they will be applied.

We hold, therefore, that appellant has no brief here within the fair intendment of our rules. And that, as the burden was on her to point out reversible error and as she cast off that burden, the judgment should be affirmed.

II. When a cause in an appellate court rides off on a question falling short of the merits it must needs be a matter of solicitude. This being so, the ruling we have just made is softened to us by the fact that we have gone over the testimony and the argument of counsel line by line and, doing the best we can, find no substantial merit in plaintiff's case. She was of age at the time of the partition. She accepted the fruits of that litigation, enjoying them for many years, and it is clear equitable doctrine that that she thereby estopped herself to attack and overthrow the partition proceedings. So, too, she failed to establish the fraud alleged in her bill by proof meeting the stringent requirements of the law in setting aside solemn judg-

ments and conveyances—in details not necessary to spread on our records. She had her day in court. The will of her mother was there. The title of the parties was threshed out. The alleged trust was necessarily held in judgment in that case. The complaints she now makes should have been poured into the ear of the court trying and determining that suit (*Interest republicae ut sit finis litium*); and, therefore, the very justice of the case comports well with the disposition made of it because of the violation of our rules. It becomes, then, a very good case to use to point a moral, viz.: that the rules of court are made to obey, not to break.

The judgment, *nisi*, is affirmed.

All concur.