L. E. PAULING, d/b/a L. E. Pauling Decorating Company, Plaintiff-Respondent,

v.

William ROUNTREE, Defendant-Appellant.

No. 32375.

St. Louis Court of Appeals.

Missouri.

Feb. 21, 1967.

**546**

Paul Taub, Overland, for appellant.

Derrick & Holderle, Tyree C. Derrick, St. Louis, for respondent.

CLEMENS, Commissioner.

In this breach of contract action the plaintiff got a $5,025 verdict and judgment for loss of profits. The defendant appeals.

Plaintiff pleaded a written agreement by which the defendant hired him to paint 91 apartment units at $323 each; that plaintiff had painted and been paid for 24 units when the defendant hired another painter who painted the remaining 67 units, this resulting in plaintiff's loss of $5,561 profits. By his counterclaim the defendant admitted the written agreement but claimed $10,000 damages for defective workmanship on the 24 completed units.

The verdict-consistent evidence: Plaintiff Lester E. Pauling is a painting contractor, and defendant William Rountree a builder of apartments. Early in 1959 Rountree was planning and developing two apartment areas, one in St. Charles and one in Overland. The St. Charles development was for 24 four-apartment units and the Overland development was for 67 identical four-apartment units. Rountree asked Pauling to bid on painting the interior doors and frames and the exterior trim and gutters of all 91 units. At that time construction of the 24 units in the St. Charles development was in process; the Overland development was still on paper. Rountree showed Pauling the detailed plans of a model unit, gave him the details of the painting he wanted, and described the locations of both developments. On May 12, 1959, Pauling submitted—and Rountree accepted—this bid:

"Dear Mr. Rountree:

"We quote as follows to furnish labor, material and equipment for interior and

exterior painting of ninety-one four-family apartment buildings:

"Apply two coats of Miniwax to 40 interior doors, paint 40 metal door frames two coats. Apply two coats of lead and oil paint to all exterior wood trim, and gutters. Each four family building, as listed above—$323.00.

"*Terms of Contract:* Fifty per cent payment on *each building* after first coat has been applied and balance on completion of *each building.*

Respectfully submitted,

L. E. PAULING
DECORATING CO.

/s/ L. E. Pauling

L. E. Pauling

"If accepted, please sign copy and return for our files. /s/ B. E. Rountree"

As the St. Charles construction progressed, Pauling's painters began the painting specified in the agreement. (This did not include painting the interior walls; that was done by another contractor, Butler Painting Company.) From time to time Rountree complained of omissions and imperfections, and Pauling corrected them. In addition, Pauling put prime coats on some of the lumber that was to be used later in the Overland job; Rountree never paid Pauling for this additional priming work, but that was not an issue in the case. While the St. Charles painting progressed, Rountree paid Pauling the agreed installments, and at the end Rountree expressed his satisfaction with the completed work on the 24 units.

The Overland development lagged. Meanwhile, Rountree made minor changes in his building plans, so there was a bit more painting to be done in each of the 67 Overland units. Nevertheless, when Pauling learned the Overland construction had progressed to a stage where his painting could be resumed, he went there to plan his work, only to find painters employed by the Butler Painting Company doing the work Pauling had contracted to do. Pauling confronted Rountree. Rountree said Butler was doing the work for less money, and when Pauling accused Rountree of breaking their contract Rountree said: "Let's assume we threw it open for re-bid." He refused to let Pauling finish the work on the 67 Overland units. Pauling's cost for painting each unit was $248.75—$74.25 less per unit than the contract price.

On trial of his counterclaim Rountree testified he had entered into the agreement with Pauling, but that Pauling had not done the St. Charles work properly. Although Rountree had no evidence of damages, the court submitted his counterclaim to the jury.

The jury found the submitted issues in favor of plaintiff Pauling and against defendant Rountree, and assessed Pauling's damages at $5,025. Judgment was rendered accordingly. The trial court denied Rountree's after-trial motions for judgment and a new trial, and he appealed.

■ Before ruling defendant's challenges we call attention to Civil Rule 83.05 (a) and (e), V.A.M.R. Subsection (a) requires an appellant's brief to contain the "points relied on," which shall state what actions or rulings of the trial court are sought to be reviewed and *wherein and why* they are claimed to be erroneous. Subsection (e) emphasizes this, declaring that the points relied on shall concisely state *why* the trial court was wrong in any ruling or action sought to be reviewed. In effect, the rule says the points relied on should be used as a target pistol firing at a bull's-eye, not as a shotgun firing at clay pigeons. Much of the defendant's brief fails to comply with the rule.

■ Point II of the brief says the trial court erred in denying defendant's motions to dismiss and for judgment "because Plaintiff's Petition fails to state facts constituting a claim upon which relief may be granted plaintiff; even after trial, plain-

tiff failed to make a case." This is an abstract assertion: it fails to state what essential elements were omitted from the pleading and proof, or *why* the trial court erred. Such a sweeping challenge to the sufficiency of a plaintiff's petition and evidence does not comply with Civil Rule 83.05(e) and presents nothing for review. See Jones v. Farm Bureau Mutual Ins. Co., Mo.App., 284 S.W.2d 11[3], and State ex rel. P. W. Finger Roofing Co. v. Koch, Mo.App., 272 S.W.2d 22[3].

Point I of defendant's brief challenges the plaintiff's verdict directing instruction. It says. the instruction errs in telling the jury a contract existed between the parties. Assuming, arguendo, that defendant's point on the instruction complies with Civil Rule 83.05 by stating wherein and why it is claimed to be erroneous, still there is nothing preserved for our review. This, because defendant's brief does not set forth the challenged instruction. In simple words Civil Rule 83.05(a) declares that when a point relied on relates to the giving or refusal of an instruction, the instruction shall be set forth in the argument portion of appellant's brief. Failure to comply carries the penalty of refusal to review. See Brown v. Thomas, Mo.App., 316 S.W.2d 234[9], and Lynch v. Rosenthal, Mo.App., 396 S.W.2d 272[7]. We have, however, examined the instruction in the transcript. But we also note that by his pleading, his evidence and his instructions the defendant admitted the written agreement with plaintiff. We see no error requiring review.

In this Point I the defendant also complains of the court's refusal of his Instruction B. The instruction is not set out in the brief, no page reference is given, nor does the point relied on say why this was error. The failure to comply with Civil Rule 83.05 prevents us from reviewing the point.

Point III of the defendant's brief challenges the giving of plaintiff's damage Instruction 7 and the refusal of defendant's damage Instruction C. The first complaint is that plaintiff's damage instruction "is erroneous in law as a measure of damages instruction in a case where plaintiff claims loss of profits." This is an abstract statement and preserves nothing for review. Civil Rule 83.05(e). The defendant also claims error because the instruction authorized the jury "to find damages without causal relationship to any alleged breach." The instruction:

"If you find in favor of the plaintiff, then you will assess his damages at whatever sum you believe he lost *by reason of his not being able to complete the contract* according to its terms and conditions."

We emphasize the words that refute defendant's point that the instruction authorized the jury "to find damages without causal relationship to any alleged breach." We are not called upon to approve or condemn this modification of MAI 4.01 to fit a loss-of-profits case. Enough that it is not erroneous on the ground defendant assigns.

The second part of defendant's Point III says the court erred in refusing his Instruction C. It read:

"If, according to other instructions, you find the issues in favor of Plaintiff Pauling on his petition herein, you will award to Plaintiff nominal damage of one dollar, unless you believe that Plaintiff has proven a larger amount of damage with reasonable definiteness and certainty, and not by speculation and conjecture."

Defendant's point relied on says the refusal of this instruction was erroneous "because the same was well founded in law, and properly stated the burden of proof of damages on plaintiff, and because the court thereby removed from the case an issue of credibility of plaintiff's testimony." Liberally construed, the gist of this point is that defendant was entitled to an instruction conversing plaintiff's damage Instruction

7, quoted above, and also the jury should have been told the burden of proving damages rested on the plaintiff.

■ The defendant was entitled to and got an instruction conversing the plaintiff's verdict directing instruction. That converse instruction told the jury to find for defendant Rountree if they did not believe plaintiff was damaged by the breach. The defendant was not entitled to an additional instruction conversing the plaintiff's damage instruction. Nor do we find merit in defendant's complaint about the plaintiff's burden of proving damages. Plaintiff's verdict directing and damage instructions each required the jury *to believe* plaintiff was damaged. The word "believe" was explained by Instruction 6, MAI 3.01. Thus, the plaintiff's burden of proving damages was stated twice.

■ For the reasons given we have declined to review several of defendant's complaints. In doing this we follow the time-honored principle that the purpose of rules of appellate procedure is to enable counsel and the court to get down to the hard-core issues of the case. This can be done only when the appellant's brief precisely informs the respondent and the appellate court just what those issues are. The rules must be enforced or abandoned, for when an appellate court does not enforce its rules it unjustly penalizes those who labor to obey them. See Sullivan v. Holbrook, 211 Mo. 99, 109 S.W. 668[2]. That case was followed in the landmark case of Ambrose v. M. F. A. Co-Operative Assn. of St. Elizabeth, Mo. (banc), 266 S.W.2d 647, where appellants were again warned of the results of violating rules of appellate procedure. Since 1954, appellate courts have cited the Ambrose case an average of six times a year. We cannot, in good conscience, ignore the failures of defendant's brief to comply with our rules.

In following this course we have not ignored Civil Rule 79.04, V.A.M.R. That rule declares that plain errors affecting substantial rights may be considered on appeal even though defectively preserved for review if manifest injustice or miscarriage of justice has resulted. We find no reason here to invoke this rule.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.