**JARON CORPORATION, Plaintiff–Respondent,**

v.

**Glenn PELLET and Geraldine Pellet, Defendants–Appellants.**

No. 18506.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 22, 1993.

Rehearing Denied Dec. 15, 1993.

Albert Crump, Jr., Rolla, for defendants-appellants.

Donald A. Hale, Steelville, for plaintiff-respondent.

GARRISON, Judge.

This is an appeal by Glenn and Geraldine Pellet (the Pellets) from a court-tried case in which the Jaron Corporation (Jaron) was awarded damages for breach of a lease. The Pellets contend there was insufficient evidence to support the judgment and that the trial court erred both in evidentiary rulings

and in denying their request to amend a counterclaim and file a third-party petition.

Property described as "Lessors' bar and restaurant building known as 'The Long Branch'" was leased by the Pellets to Jaron in a written lease dated April 29, 1979. It provided that Jaron was "to have the power to use said leased premises for the purposes of operating a restaurant, bar, together with related uses...." The stated term was for one year commencing May 25, 1979 with options to renew, but the lease also provided that it was "contingent upon the Lessee obtaining the proper liquor and other licenses to operate a bar and restaurant on the leased premises," and that if the licenses were not obtained by June 15, 1979, then "this Lease, at the option of the Lessee, shall be null and void."

Simultaneously with the execution of the lease, Jaron began to remodel and renovate the building, and its president, Jim Schmitt, contacted the local liquor control agent and obtained an application for a liquor license. Before the application was submitted, however, the liquor control agent contacted Mr. Schmitt, telling him that a church was located in another building owned by the Pellets which was within fifteen feet of the Long Branch. Mr. Schmitt was informed that he would need to obtain consent from the church pursuant to § 311.080 RSMo[1] before the license could be issued.[2]

Mr. Schmitt then found that there was a sign on the front of the adjoining building saying "Bibleway Fellowship" which had not been present when the lease was signed. Evidence was introduced indicating that the Pellets, at some point after Jaron began renovating the Long Branch, made an arrangement with the church group whereby they would be permitted to use the adjoining building rent free, with that donation being valued at $400 per month.

Mr. Schmitt asked the church's leader, Mr. Moses, if they would consent to liquor being sold at the Long Branch and the evidence indicated he received a negative response, including the statement that under no circumstances would Jaron be permitted to sell "liquor to the drunks of Crawford County." According to the testimony, Mr. Schmitt also talked with Mrs. Pellet, who contended that the religious group was not a church and that it should not be an impediment to obtaining the liquor license. She also refused to ask the group to vacate the adjoining building.

Mr. Moses testified that his congregation was totally against the consumption of alcoholic beverages, he would not have consented to the licensing of the Long Branch for the sale of those beverages, and in his opinion the congregation also would have refused to consent. The liquor control agent testified that it would have been useless to submit an application under these circumstances because it would have been rejected.

Jaron terminated its renovation activities and did not proceed with the lease, leaving tables, chairs and other articles of personal property on the premises as well as the completed permanent renovations. It filed suit on December 15, 1980, claiming damages on the theory that the Pellets breached their obligations under the lease by permitting the adjoining building to be used for religious worship, thereby preventing it from obtaining a liquor license. Thereafter, its petition was amended in January 1984 to also allege intentional interference with Jaron's business purpose by authorizing use of the adjoining building by the church which, under the circumstances, amounted to an eviction and ouster of Jaron. Following a trial in May 1992, the court entered a judgment on October 19 of that year, finding that the Pellets breached the lease and awarding $5,437.87 to Jaron as actual damages. The Pellets appeal from that judgment.

■ As in any court-tried case, we review the case upon both the evidence and the law, giving due regard to the opportunity of the trial court to judge the credibility of witness-

1. All references to statutes are to RSMo 1978, V.A.M.S.

2. Pursuant to § 311.080, a license to sell intoxicating liquor cannot be granted within one hundred feet of a church or other building regularly used as a place of religious worship without written consent of a majority of the managing board of the church.

es. Rule 73.01(c)(1) and (2).[3] The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ The first point raised by the Pellets is:

> The trial court erred in overruling appellants' motion to dismiss at the close of respondent's evidence, in overruling appellants' motion to dismiss at the close of all evidence and in entering judgment in favor of respondent for the reason that respondent does not have a cause of action.

Rule 84.04(d) requires that a point relied on "shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." The requirements of that Rule are explained in the leading case of *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978). In the instant case, the first point is an abstract assertion which presents nothing for review. *Bentlage v. Springgate*, 793 S.W.2d 228, 229–31 (Mo.App. 1990); *Pauling v. Rountree*, 412 S.W.2d 545, 548 (Mo.App.1967). Point I is, therefore, denied.

■ In Point II the Pellets contend that the trial court erred in finding a breach of the terms and conditions of the lease because Jaron allegedly presented no evidence to establish a constructive eviction in that there was no evidence of any wrongful conduct, omission of a duty, or substantial interference with the use of the premises by the

Pellets and, in addition, Jaron waived any claim of constructive eviction by its failure to promptly abandon the leased premises. Jaron, however, pleaded both a breach of the lease and interference with its business purpose amounting to an eviction and ouster (the latter being apparently labeled by the Pellets as "constructive eviction"). The trial court found only that the Pellets had breached the lease and did not purport to base its finding on the theory of constructive eviction. In its judgment entry, it stated that the Pellets breached the terms and conditions of the lease by permitting the church to use the adjoining building during the time Jaron was attempting to obtain a liquor license, knowing that it was an impediment in the licensing process and that the church would not give the required consent.[4] These findings were supported by the evidence.

■ An appellate opinion should be limited to those questions essential to a proper disposition of the appeal. *State v. State Tax Com'n of Missouri*, 651 S.W.2d 130, 133 (Mo. banc 1983). This point is, therefore, denied as irrelevant. *Bryant v. Prenger*, 717 S.W.2d 242, 243–44 (Mo.App.1986); *Antioch Travel Center v. Phillips*, 676 S.W.2d 88, 89–90 (Mo.App.1984); *Coalition to Preserve Ed. v. K.C. Sch. Dist.*, 649 S.W.2d 533, 536 (Mo. App.1983).

■ In Point III the Pellets allege trial court error in admitting James Schmitt's testimony that he made an oral agreement with the Pellets that rent was not due until Jaron actually commenced business in the leased premises. The Pellets contend that the testimony violated the parol evidence rule and resulted in the trial court's denial of their

---

**3.** All references to rules are to Missouri Rules of Court, V.A.M.R.

**4.** It has been held that provisions not specifically mentioned in a written contract but which are essential in carrying out its purposes may be implied and are, therefore, binding as if written. In *Bonanza, Inc. v. McLean*, 242 Kan. 209, 747 P.2d 792 (1987), defendant's lease of property to plaintiff contemplated the development of a shopping center. Defendant, however, refused to sign a certificate required by plaintiff's mortgage creditor stating that the lease was in full force and effect and thereby prevented construction financing from being obtained. In holding that defendant violated an obligation created by

the contractual relationship of the parties, the court said:

> ... [T]here is an implied undertaking in every contract on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out his part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Ordinarily if one exacts a promise from another to perform an act, the law implies a counterpromise against arbitrary or unreasonable conduct on the part of the promisee.

*Id.*, 747 P.2d at 801.

counterclaim for rent and reimbursement of insurance premiums.

A certain latitude is allowed concerning the admission of evidence in a court-tried case. Even if the evidence complained of in the instant case was inadmissible (a question which we need not consider), it will not be found to be prejudicial and a ground for reversal except where the trial court relies on that evidence in arriving at its findings. *Blackburn v. Richardson,* 849 S.W.2d 281, 292 (Mo.App.1993), quoting from *In re Marriage of Clark,* 801 S.W.2d 496, 498–499 (Mo. App.1990). *See also In Interest of L.W.,* 830 S.W.2d 885, 890 (Mo.App.1992).

In the instant case, the trial court found against the Pellets on their counterclaim without specifying reasons. The Pellets requested findings of fact and conclusions of law but, in doing so, did not request specific findings concerning their counterclaim except "what damages, if any, either party are [sic] entitled to recover from the other." Rule 73.01(a)(2) provides that the trial court shall include in its findings those controverted fact issues specified by counsel and that "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." The trial court, in the instant case, made the only finding requested of it by the Pellets concerning their counterclaim, to wit: that they were entitled to no damages. We are, therefore, unable to conclude that the trial court relied on the evidence about which the Pellets complain in arriving at its judgment, and we look only to determine if there was other sufficient competent evidence to support the trial court's judgment on the counterclaim. *In Interest of C.K.G.,* 827 S.W.2d 760, 767 (Mo.App.1992).

■■■ The lease called for the first rent payment to be due May 25, 1979. It also provided, however, that it was contingent upon Jaron obtaining a liquor license to operate a bar by June 15. Mr. Schmitt testified that no lease payments were made "because the lease called for a payment, I believe, in May, the end of May; and by that time, all of this had occurred." This obviously referred to Jaron's inability to obtain a liquor license because of the use of the adjoining building.

Mrs. Pellet testified that Mr. Schmitt told her, "We cannot go through with this. I can't get a liquor license because of this building next door...." There was, therefore, evidence from which the trial court could find that, pursuant to the lease, Jaron notified the Pellets of its intention to avoid the lease after learning it would not be able to obtain the license. This was followed by evidence that Jaron abandoned the building in keeping with the requirement that a tenant surrender possession of the premises in order to effectively cancel a lease pursuant to its terms. *See Arnett v. USX Corp.,* 763 S.W.2d 169, 171 (Mo.App.1988). While some personal property remained on the premises, there was no evidence Jaron continued to exercise dominion or control over the building after learning of its inability to obtain the license.

We conclude, therefore, that even if the evidence complained of was inadmissible, it was not prejudicial because there was other evidence upon which the trial court could have found against the Pellets on their counterclaim. Point III is, therefore, denied.

■■■ In Point IV the Pellets contend the trial court erred in awarding pre-judgment interest "because such interest was not specifically pleaded in respondent's second amended petition and thus the evidence of prejudgment interest was properly objected to as beyond the scope of the pleadings and the findings and judgment were erroneous as granting relief not requested in the pleadings." This point, as phrased, does not raise an issue concerning whether this claim was the type upon which pre-judgment interest could have been awarded if it had been properly pleaded. Rather, the only issue raised is whether the pleading itself was sufficient to include a request for pre-judgment interest.

In the instant case, the prayer of the petition included the words "and for such other relief as this Court deems just and proper in the premises." A similar prayer has been held to authorize the award of pre-judgment interest. *General Aggregate Corp. v. La-Brayere,* 666 S.W.2d 901, 910 (Mo.App.1984). Based upon the issue as presented by the

Pellets, we find no error under this point and, therefore, deny the same.

In Point V the Pellets argue that the trial court erred in awarding Jaron amounts representing reimbursement for improvements it made to the property, contending that a tenant is not entitled to recover such expenses in the absence of an express agreement by the landlord. They cite *State v. St. Charles County Associates*, 698 S.W.2d 34 (Mo.App.1985), and *First Nat. Bank of Kansas City v. Nee*, 190 F.2d 61 (8th Cir.1951), both of which are distinguishable from the instant case. The *St. Charles County* case was a condemnation case where the issue was the right of the tenant to share in a condemnation award because of improvements made to the property during the lease. In that case, the court acknowledged that in Missouri a tenant is not entitled to compensation for improvements made to a leasehold in the absence of an agreement that the landlord will pay for them. In the *First Nat. Bank* case, the question was whether the tenant owned improvements made to the premises.

In Missouri a lease gives rise to a contractual relationship between the landlord and tenant with the result that damages is one remedy available to the tenant upon breach. *King v. Moorehead*, 495 S.W.2d 65, 75–76 (Mo.App.1973). Therefore, a tenant may be entitled to compensation for a loss which is the natural and direct consequence of the breach of a lease, including expenditures made in advance to enable the tenant to have the enjoyment of the leased premises. *Hamilton Music v. Gordon A. Gundaker Real Est.*, 666 S.W.2d 840, 844 (Mo.App. 1984).

In the instant case, the Pellets' conduct prevented Jaron from utilizing the premises for the purpose for which it was leased. As a result, it did not have the opportunity to use the improvements in furtherance of that purpose.[5] The court made the finding that as a direct and proximate result of the breach Jaron suffered actual damages of $5,437.87. By that finding the court obviously determined that Jaron was entitled to be compensated for the improvements as an element of damage resulting from the Pellets' breach of the lease. We are unable to conclude that, under the facts of the instant case, this judgment represents an erroneous declaration or misapplication of the law. *See Whitson v. Lende*, 442 N.W.2d 267 (S.D.1989). This point is, therefore, denied.

In Point VI the Pellets contend the trial court abused its discretion in denying their request to file an amended counterclaim and a third-party petition. The original counterclaim which was tried sought recovery for rent and insurance premiums. The amended counterclaim would have sought damages for interference with the ability to relet the premises, and included a claim that Jaron was the alter ego of James Schmitt and another officer, thereby exposing them to liability as well as Jaron. The proposed third-party petition contained a claim described by the Pellets as abuse of process.

The Pellets concede that the amendment which they requested was discretionary with the trial court pursuant to Rule 55.33(a). While that Rule provides that "leave [to amend] shall be freely given when justice so requires," a party does not have an absolute right to amend his pleading. *Downey v. Mitchell*, 835 S.W.2d 554, 556 (Mo. App.1992). Rather, the trial court has broad discretion in deciding whether to permit amendments. *Id.* The denial of an amendment is presumed correct and the burden is on the proponent to show that the trial court palpably and obviously abused its discretion. *Gohlston v. Lightfoot*, 825 S.W.2d 864, 869 (Mo.App.1992), citing *Rigby Corp. v. Boatmen's Bank and Trust Co.*, 713 S.W.2d 517, 547 (Mo.App.1986). Judicial discretion is abused when a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Shirrell v. Missouri Edison Co.*, 535 S.W.2d 446, 448 (Mo. banc 1976).

---

5. No issue was raised at trial or on this appeal concerning the reasonableness of Jaron making the improvements before obtaining a liquor license.

The original suit was filed in December 1980 and the amendment was not requested until March 1987. It has been said that the purpose for liberally permitting amendments is to permit matters to be pleaded which were overlooked or unknown when the action was originally filed. *Downey v. Mitchell*, 835 S.W.2d at 556. No such justification was pleaded or is now argued by the Pellets.

The Pellets, in their requested amendment, also sought to plead a claim for abuse of process arising from the filing of Jaron's original petition in December 1980. A claim for abuse of process is subject to a five-year statute of limitations under § 516.-120(2) and a cause of action accrues, and the statute of limitations begins to run, as soon as the acts complained of are committed. *Corley v. Jacobs*, 820 S.W.2d 668, 672 (Mo. App.1991). In the instant case, the alleged abuse of process was the filing of the suit in December 1980 and the service of process which was completed by the Pellets' entry of appearance in January 1981. The five-year statute of limitations for the abuse of process claim sought to be pleaded therefore had expired prior to March 1987 when leave to file the third-party petition was first requested. Additionally, the claim for abuse of process would not relate back to the date Jaron first filed the petition so as to avoid the bar of the statute of limitations since the Pellets' proposed claim would require proof of ultimate facts different from those necessary to sustain Jaron's original claim, and thus constitutes a new cause of action. *Welch v. Continental Placement, Inc.*, 627 S.W.2d 319, 321 (Mo.App.1982).

In the instant case, we find that denial of the leave to file the amended counterclaim and third-party petition was not an abuse of discretion. This point is, therefore, denied.

The judgment entered in the above cause is affirmed.

PREWITT and CROW, JJ., concur.