Edward A. VODICKA and Shirley
Vodicka, Plaintiffs–
Appellants,

v.

The UPJOHN COMPANY, Defendant–
Respondent.

No. 17851.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 4, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 21, 1994.

Application to Transfer Denied
Feb. 22, 1994.

Kevin D. Meyers, Kansas City, for plaintiffs-appellants.

John W. Cowden, Phillip C. Rouse, Baker, Sterchi & Cowden, Kansas City, R. Lynn Myers, Springfield, for defendant-respondent.

PARRISH, Chief Judge.

Edward A. Vodicka sought damages for personal injuries that he alleged were sustained from inhaling fumes from a chemical product manufactured and sold by The Upjohn Company (Upjohn). Shirley Vodicka, his wife, sought damages for loss of consortium based on Edward's injuries. The case was tried before a jury. The jury returned verdicts for Upjohn. Judgment was entered in accordance with the verdicts. Plaintiffs appeal. For the reasons that follow, the appeal is dismissed.

*Facts*

Edward Vodicka was employed by Dayco Corporation (Dayco), a manufacturing company. One of the products Dayco manufactures is fan belts. Dayco uses an isocyanate product that is manufactured and sold by Upjohn under the trade name PAPI. Dayco mixes PAPI with toluene to make a substance known as J–1019.[1] J–1019 is a dip Dayco uses in the manufacturing process for fan belts.

The first stage in Dayco's manufacture of fan belts is processing and chemically treating a thread-like cord. The treated cord is then embedded in a rubber product that is cured and vulcanized in steam pots. The rubber product is cut into fan belts.

J–1019, the chemical mixture that includes the isocyanate product (usually PAPI), is used in the first stage of the manufacturing process. It is one of two chemical dips[2] through which the thread-like cord passes. The process entails pulling the cord, on rollers, through several ovens and the chemical dips.

Mr. Vodicka claims that he sustained disabling respiratory injuries from isocyanate poisoning. He claims he had been constantly exposed to isocyanate fumes caused by the PAPI that was part of the J–1019 mixture.

---

1. Dayco does not always use PAPI as the isocyanate product it mixes with toluene to make J–1019. Dayco sometimes purchases isocyanate products made by other manufacturers and mixes those products with toluene to make J–1019.

2. The other chemical dip is a mixture of resorcinol, formaldehyde and latex known as the R–F–L dip.

Mr. Vodicka contends that the poisonous fumes were in the air that circulated throughout the plant. He contends that he was also exposed to fumes that exited the plant through ventilation stacks and to fumes inside rooms in the plant where the ovens were located that cured the products being manufactured. He claims that fumes were emitted from cracks in the oven doors. He also testified that he inhaled isocyanate fumes when he extinguished a fire in the plant in December 1979.

There was evidence that Mr. Vodicka was a heavy cigarette smoker. Dayco attributed Mr. Vodicka's disabilities to his heavy smoking.

### Respondent's Motion to Dismiss

Plaintiffs filed their brief April 7, 1993. The brief contained no jurisdictional statement. Rule 84.04(a)(1). On May 3, 1993, plaintiffs moved to "insert a jurisdictional statement" in the brief. Upjohn filed a motion entitled "Respondent's Motion to Dismiss Appeal" May 4, 1993. Upjohn's motion sought dismissal of the appeal because plaintiffs failed to include a jurisdictional statement in their brief and failed to comply with other Supreme Court Rules applicable to appellate briefs.

Respondent's Motion to Dismiss Appeal was ordered taken with the case. Plaintiffs' request to insert a jurisdictional statement in its brief was denied, but plaintiffs were allowed ten days in which to file a corrected brief. Plaintiffs filed an Amended Appellants' Brief that contained a jurisdictional statement but did not change other parts of the original brief that Upjohn claimed violated requirements for appellate briefs.

Upjohn's motion to dismiss asserts noncompliance with rules applicable to appellate procedure. The rules that Upjohn claims plaintiffs violated include Rules 84.04(c) and 84.04(h). Upjohn contends the statement of facts in plaintiffs' Amended Appellants' Brief violates Rule 84.04(c); that it is not a fair and concise statement of facts, without argument, relevant to questions for determination on appeal. The motion contends that the statement of facts and argument also violate Rule 84.04(h) because they do not consistently "have specific page references to the legal file or transcript" and contain references to material not admitted into evidence at trial.

### Rule 84.04(c)

■ Rule 84.04 prescribes requirements for appellate briefs. Its subsection (a) states:

The brief for appellant shall contain: (1) A concise statement of the grounds on which jurisdiction of the review court is invoked; (2) A statement of the facts; (3) The points relied upon; and (4) An argument which shall substantially follow the order of "Points Relied On."

Subsection (c) provides:

The statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument....

Many cases and articles have explained the importance of Rule 84.04(c) (and its predecessor Rule 1.08(2) (revoked)). In *Kleinhammer v. Kleinhammer*, 225 S.W.2d 377 (Mo.App.1949), respondent filed a motion to dismiss an appeal for failure to comply with Rule 84.04(c)'s predecessor, Rule 1.08(2). The court granted the motion saying:

After a careful examination of all the evidence in this transcript, a mere reading of the statement of facts in appellant's brief discloses that appellant has ignored the evidence presented on behalf of respondent....

.     .     .     .     .

It is well established even under the liberal interpretation of the new rules concerning appeals that such an omission is not substantial compliance with the rules and is fatal to the appeal....

*Id.* at 378.

In *State v. Division 1287 of Amalgamated Ass'n of Street, Electric Railway, and Motor Coach Employees of America*, 361 S.W.2d 33 (Mo. banc 1962), the court, with considerable reluctance due to numerous breaches of rules relating to briefing requirements in appellate cases, ruled on the merits of the case saying, "Except for the fact that this case involves matters of great public importance, we

should not hesitate to dismiss this appeal for the failure of appellants to comply with the rules of this Court governing the preparation and contents of appellants' briefs." *Id.* at 45.

In *Geiler v. Boyer*, 483 S.W.2d 773 (Mo. App.1972), the court granted a motion to dismiss an appeal for appellant's failure to comply with Rule 84.04(c), saying:

[A]ppellant's statement of facts edits much of the content of plaintiff's proof of the injury in order to present a view of facts favorable to his contention that the verdict and judgment were excessive....

. . . . .

The provision of Civil Rule 84.04(c), V.A.M.R., that: "The statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument" is intended to "afford an immediate, accurate, complete and unbiased understanding of the facts of the case". *Wipfler v. Basler*, Mo., 250 S.W.2d 982, 984[3] [1952]. Appellant's statement which emphasizes facts favorable to himself and omits others essential to the position of the respondent plaintiff is not a substantial compliance with that rule. *In re Adoption of P.J.K.*, Mo.App., 359 S.W.2d 360, 363[3] [1962].

*Id.* at 774.

In *Devoy v. Devoy*, 502 S.W.2d 428, 430 (Mo.App.1973), the court reiterated, "The failure of an appellant to comply with the requirements for a sufficient statement of facts, alone, constitutes ground for dismissal of an appeal. *Markowitz v. University City*, 335 S.W.2d 455 (Mo.App.1960)."

In *State v. White*, 529 S.W.2d 22 (Mo.App. 1975), this court acknowledged that the dismissal of civil cases for noncompliance with Rule 84.04 was occurring with considerable frequency and pointed out that briefs in criminal cases were fraught with the same danger of dismissal as civil cases for noncompliance with procedural rules in briefing.[3] *White* states:

While evidencing a reluctance to do so, and in case after case overlooking clear violations of Rule 84.04 and ruling the appeal on its merits, the appellate courts of this state are finding it more and more necessary to require and demand observance of and compliance with the rules governing appeals. Dismissal of civil cases for noncompliance with Rule 84.04 is becoming more commonplace.

*Id.* at 24 (footnote omitted).[4] *White* quoted from *Sullivan v. Holbrook*, 211 Mo. 99, 104, 109 S.W. 668, 670 (1908):

The rules of appellate practice in hand are simple and plain. They fill no office of mere red tape, or as a show of surface routine. To the contrary, they have substance, and carry on their face the obvious purpose to aid appellate courts in getting at the right of a cause. Hence, apparently, they bespeak the dignity arising from obedience. If they are not to be obeyed, they should be done away with once and for all. A just rule, fairly interpreted and enforced, wrongs no man. Ostensibly enforced, but not, it necessarily wrongs some men viz., those who labor to obey it—the very ones it should not injure.

*See White*, 529 S.W.2d at 25.

The topic of noncompliance with rules applicable to appellate briefs was addressed in Weier and Fairbank, *Why Write A Defective Brief? Give Your Client A Chance On Appeal*, 33 J.Mo. Bar 79 (1977). The article chronicled dismissals by appellate courts from January 1, 1972, to June 30, 1976.

Thirty-two appeals were dismissed after submission because of defective briefs by

---

3. At the time *State v. White* was decided, "Rule 28.18 [repealed effective January 1, 1980] provide[d] the Rules of Civil Procedure, with exceptions not [t]here involved, [were] to be followed and govern[ed] ... appeals of criminal cases." 529 S.W.2d at 24. Rule 30.06 states current requirements for briefs in criminal cases.

4. In *White, supra*, at 24 n. 3, the court cited the following cases as examples of civil cases that were dismissed for failure to comply with Rule

84.04: *Graff v. Montileone*, 523 S.W.2d 131 (Mo. App.1975); *Dors v. Wulff*, 522 S.W.2d 325 (Mo. App.1975); *Glick v. Harris*, 518 S.W.2d 227 (Mo. App.1974); *Power v. Automobile Club Inter–Insurance Exchange*, 516 S.W.2d 541 (Mo.App. 1974); *Kerr v. Ehinger, Inc.*, 515 S.W.2d 763 (Mo.App.1974); *Hampton v. Gilmore*, 511 S.W.2d 442 (Mo.App.1974); *Donnell v. Vigus Quarries, Inc.*, 489 S.W.2d 223 (Mo.App.1972); *Robbins v. Meyers*, 412 S.W.2d 504 (Mo.1967).

Missouri appellate courts from January 1, 1972 to June 30, 1976. Eight of these dismissals occurred in 1975 and eight in only the first half of 1976. During the full period, seventy-one additional cases had one or more points dismissed as presenting nothing for appellate review, with eighteen of these occurring in 1975 and seven in the first six months of 1976. In addition, one hundred twenty-five more cases decided between January 1, 1972 and June 30, 1976 involved briefing violations that could have justified dismissals but for various reasons were not dismissed.

*Id.* It pointed to the warning in *Cole v. Cole*, 516 S.W.2d 518, 521 (Mo.App.1974) (Simeone, P.J., concurring):

> [T]he time has come for all counsel on appeal to scrupulously follow and conform to the Rules of the Supreme Court relating to appellate practice. While I am sympathetic with the great demands on the time of counsel, too often we have been lenient with the rules either because of our deference to the members of the bar or to the rights of the parties so that their important interests may be determined. * * * We no longer can afford the luxury of doing the work of an advocate on appeal [*Donnell v. Vigus Quarries, Inc.*, 489 S.W.2d 223 (Mo.App.1972) ], and of necessity must make closer examination of briefs and, where deficient, simply dismiss the appeal and let the consequences fall where they may. If a cause is important enough to have it reviewed by an appellate court, it deserves the time, effort, sweat and toil worthy of the good lawyers we have in our Bar and which is worthy of a professional person.

33 J.Mo.Bar at 79.

Judge Weier's and Mr. Fairbank's article addressed the requirements of Rule 84.04(c), stating, regarding the period for which they reviewed appellate cases, "The most common errors were based on slanted facts, arguing the facts, presenting too short or too long a statement and not including transcript references as required by Rule 84.04(h)." *Id.* at 86. The article includes the following suggestions and observations:

Ideally, a statement of facts should be so objective and fair that a court could use the statement from a brief for the statement of facts in its opinion.... Arguments should not appear in the statement of facts but should appear only in the argument portion of the brief.... And, as Judge A.P. Stone has forcefully pointed out in his article "Effective Appellate Briefs," even if the statement of facts is inadequate, "an inaccurate or biased statement, whether colored affirmatively by untruth or negatively by half-truth, is likely to hinder rather than advance the cause of the brief writer, and there is grave danger that the court may lose faith not only in that portion of the brief but also in the important portions following." [Stone, *Effective Appellate Briefs*, 15 J.Mo.Bar 80, 83 (1959).] Candor, accuracy and fairness are indispensable. It must always be remembered that the facts upon which the case turns on appeal generally are not the facts advanced by counsel or his client before the case is tried but rather those that were determined by the court or jury in their findings and verdict.

References to the transcript are very important, not only because they are required and because they are a great timesaver for the court, but also because: "A vital assertion in the statement of facts without a page reference * * * gives the impression that the assertion is probably not borne out by the record, and was made in bad faith." [Dew, *Manual of Appellate Practice and Procedure in Missouri*, 26 U.K.C.L. Rev. No. 3 (1958) at 50.] It is much better to err on the side of too many transcript references than too few.

*Id.* at 87 (footnotes omitted).

The problem persisted after its discussion by Judge Weier and Mr. Fairbank. In *Commerce Bank of Kansas City v. Conrad*, 560 S.W.2d 388 (Mo.App.1977), the court dismissed an appeal concluding, "[D]efendant-appellant's Statement of Facts is so confusing that it fails in its essential purpose of providing the reviewing court with an 'understanding' of the case."[5] *Id.* at 390. The

---

**5.** *Commerce Bank of Kansas City v. Conrad, su-* *pra,* also involved the violation of an appellant

court held, "A Statement of Facts which violates Rule 84.04(c) is sufficient grounds for dismissing an appeal." *Id.*

Other cases in which insufficient statement of facts were addressed include *Pemiscot County Memorial Hospital v. Missouri Labor and Industrial Relations Comm'n,* 825 S.W.2d 61 (Mo.App.1992) ("A statement of facts not complying with Rule 84.04 and which fails to set forth material evidence presented by respondent preserves nothing for review by this court." *Id.* at 63); *Simpson v. Galena R–2 School Dist.,* 809 S.W.2d 457 (Mo.App.1991) ("A statement of facts containing argument and failing to present material evidence presented by respondent supporting its position is not a fair statement of facts required by Rule 84.04(c)." *Id.* at 458); *Thompson v. Thompson,* 786 S.W.2d 891, 892 (Mo.App.1990); *Pillow v. Sayad,* 655 S.W.2d 816 (Mo.App.1983); and *Moore v. Rollmo Corp.,* 575 S.W.2d 859, 860–61 (Mo.App.1978).

Does plaintiffs' statement of facts constitute "a fair and concise statement of facts relevant to the questions presented for determination?" Is the statement of facts free of argument?

Upjohn alleges, in its motion to dismiss the appeal, that plaintiffs' statement of facts is saturated with biased, inflammatory, sarcastic and argumentative statements; that it, therefore, violates Rule 84.04(c). A thorough reading of plaintiffs' statement of facts convinces this court that Upjohn's assertion is well-founded. Plaintiffs' statement of facts is anything but fair and concise. It is replete with argument.

The statement of facts in plaintiffs' brief is 62 pages long. It contains considerable amounts of unwarranted sarcasm. It postulates without factual foundation. Interlaced throughout the "statement of facts" are statements such as:[6]

It's a wonder Vodicka wasn't killed by this exposure [to smoke from the J–1019 curing ovens].

.    .    .    .    .

Due to the negative pressure, think of the unsafe exposures these unfortunate workers endured. Edward Vodicka is Upjohn's guinea pig—Upjohn's laboratory experiment.

.    .    .    .

All of Upjohn's literature on the safety of PAPI was geared to the foam market because they didn't heat it. ... Upjohn had discovered a perfect gimmick, brag about PAPI'S safety ... around a bunch of chemical gobbledegook and sell it to everybody.

.    .    .    .    .

The reason 50 percent of the population of Dayco wasn't killed instantaneously is because the human beings that worked at Dayco were a lot larger than rats.

.    .    .    .    .

Apparently Rye [Upjohn's corporate occupational health physician and industrial hygiene safety supervisor] just collected a paycheck for a "doctor" title for Upjohn.

In addition to being argumentative, plaintiffs' statement of facts emphasizes only facts favorable to them. Emphasizing facts favorable to appellant and omitting others essential to respondent does not substantially comply with Rule 84.04(c). *Geiler v. Boyer,* 483 S.W.2d at 774. An example from the Amended Appellants' Brief is: "Plaintiff's [sic] evidence was that there were no warnings on the PAPI barrels [in which Upjohn shipped the chemical to Dayco] from 1962 through 1980." Four of the witnesses who testified during plaintiffs' case-in-chief recalled seeing warnings on the barrels during the 1970's or before. Samuel John Brady testified that he recalled a warning label on a barrel in the mid-seventies. Daryl Hogan saw labels on barrels in the mid-seventies.

including legal arguments in the statement of facts in his brief. The court stated, "A recitation of the law—even when correct—is improper in the Statement of Facts portion of the brief, and is a violation of Rule 84.04(c)." 560 S.W.2d at 390.

6. Rule 84.04(h) was also violated in that no references to the transcript or legal files were provided for the statements.

Raymond Newsham saw warning labels on barrels received in 1973. Dr. William A. Rye testified that warning labels were placed on barrels before 1975—he was sure the warning data was included on labels used after 1967.[7]

In addition to the sarcasm in plaintiffs' "Statement of Facts," there are a variety of conclusions. A statement of facts that opts for conclusions rather than an accurate statement of facts as determined by the trial court leaves a reviewing court with no intelligent understanding of the facts of the case. *Kleinhammer v. Kleinhammer*, 225 S.W.2d at 378. Conclusions that appear in plaintiffs' statement of facts include:

> Although it is tragically sad, it is nonetheless true, that the federal government of the United States of America, through its Health and Safety Department, NIOSH, implicitly sanctioned the dishonest Upjohn warning label which Upjohn took full advantage of in the trial of this cause.[8]

> . . . . .

> What an ingenious sales gimmick and trademark, to name an isocyanate product wherein one molecule could kill a human being as a nickname for "our father."

> . . . . .

> It is unknown why the government of the United States of America did not recommend that a warning label on isocyanates should tell people that isocyanates cause asthma, permanent respiratory impairment, and have been known to kill people.[9]

And, in an attempt to address the propriety, or lack thereof, of opposing counsel's conduct during closing argument (although no objec-

tions to the conduct were made during trial), plaintiffs' brief states:

> This [the alleged placement of a package of Camel cigarettes within the jury's view during closing argument] was done for the sole purpose to inflame and prejudice the jury. . . . Mr. Vodicka was deprived of his right to confront an inaccurate prejudicial fact and in effect Upjohn's attorney became an unsworn witness against Mr. Vodicka.[10]

Upjohn's complaint that plaintiffs' brief violates Rule 84.04(c) is well-taken. The Amended Appellants' Brief neither fairly nor concisely states the facts that support the jury's verdicts.

### Rule 84.04(h)

Rule 84.04(h) provides:

> All statements of fact and argument shall have specific page references to the legal file or the transcript.

■ As previously noted, plaintiffs violated Rule 84.04(h) by citing no page references to either the transcript or legal file for certain assertions in the statement of facts section of the Amended Appellants' Brief. *See* n. 8 and n. 9, *supra.* Various references are made in plaintiffs' Statement of Facts to exhibits without indicating, by reference to the transcript, that the exhibits were admitted in evidence. Some references are to exhibits that were not filed with this court nor made part of the legal file component of the record on appeal. Other references are to exhibits that, upon review of the index to the transcript, appear to not have been admitted in evidence.

To refer to exhibits without demonstrating, by reference to the transcript, that they were admitted in evidence amounts to an invitation

---

7. Dr. Rye worked for Upjohn from 1966 to 1976.

8. Plaintiffs cite no reference in the transcript or legal file for this assessment. They cite two exhibits which consist of more than 200 pages. They cite no page numbers within the exhibits. This court did not discern any statement in its review of the exhibits that resembles the statement quoted above.

9. The last two quotations from plaintiffs' brief cite page references within exhibits. The pages

cited do not contain statements similar to those in plaintiffs' brief.

10. Arguably, this assessment included a recitation of law, i.e., that plaintiffs were entitled to confront and cross-examine witnesses. As such, it would violate Rule 84.04(c). Recitations of law in statements of fact portions of briefs violate Rule 84.04(c). *See Commerce Bank, supra,* at n. 5.

for a reviewing court to undertake its own unassisted search of the record, an invitation not appreciated and seldom accepted. To refer to exhibits not admitted in evidence is unpardonable. A reviewing court cannot go beyond the record. *Couch v. Director, Missouri State Division of Family Services,* 795 S.W.2d 91, 94 (Mo.App.1990). Upjohn's claim that plaintiffs' brief violates Rule 84.-04(h) is well taken.

### Rule 84.04(d)

■ Although Upjohn does not complain about what plaintiffs' points relied on attempt to appeal from or the excessive number of "authorities" that are listed following two of those points, Rule 84.04(d) is violated. Rule 84.04(d) states:

> The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder. If more than three authorities are cited in support of a point made, the three authorities principally relied on shall be cited first. All authorities discussed in the argument shall be cited under the "Points Relied On." Long lists of citations should not be included.

> Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule.

Plaintiffs' brief attempts to state seven points on appeal. None are directed to the judgment of the trial court. Each point on appeal begins, "The trial court erred in overruling plaintiffs' motion for new trial on the basis of...."

> The order overruling the motion for a new trial is not appealable. § 512.020 [RSMo 1969, V.A.M.S.]; *Mills v. Berry,* 395 S.W.2d 228, 231[8] (Mo.App.1965). The appeal should have been taken from the judgment....

*Matter of Estate of Langford,* 529 S.W.2d 31, 32 (Mo.App.1975). *See also Nickerson v. Moberly Foods, Inc.,* 781 S.W.2d 87, 91 (Mo. App.1989); *Empire Gas Corp. v. Randolph,* 552 S.W.2d 82, 83 (Mo.App.1977); Rule 81.01.

The first two points on appeal disregard Rule 84.04(d)'s admonition that "[l]ong lists of citations should not be included." There are 33 citations that fill two pages of the brief following each of the two points.

### Ruling on Upjohn's Motion to Dismiss the Appeal

■ Although Upjohn emphasized its sincerity in its motion to dismiss the appeal—the first paragraph of the motion states, "Upjohn does not file this motion lightly"—plaintiffs gave the motion little heed. Plaintiffs' response to the motion to dismiss the appeal was more an amplification and continuation of argumentative dialogue than a refutation of noncompliance with appellate procedural rules. Plaintiffs stated in their response, "These kind of complaints are a terrible waste of time."

The warning sounded by Judge Simeone in his concurring opinion in *Cole v. Cole, supra,* needs no amplification. The problems identified in Judge Weier's and Mr. Fairbank's article remain.

This court concludes that Upjohn's motion to dismiss the appeal should be granted. Nevertheless, further gratuitous review of the record on appeal convinces this court that the conduct of the trial and the jury's verdicts worked no injustice on plaintiffs. Although this appeal is dismissed for procedural defects in the Amended Appellants' Brief, this court's review discloses no prejudicial error in the trial of this case. The motion to dismiss the appeal is granted.

SHRUM and MONTGOMERY, JJ., concur.